COURT OF APPEALS OF VIRGINIA

Present: Judges Fulton, Ortiz and Raphael

KATIE FURBEE

MEMORANDUM OPINION[*] BY
v.      Record No. 0125-22-1      JUDGE DANIEL E. ORTIZ
JUNE 28, 2022

VIRGINIA BEACH DEPARTMENT
OF HUMAN SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

(Thomas H. Sheppard, II; Sheppard & O'Brien, P.C., on brief), for
appellant. Appellant submitting on brief.

(Mark D. Stiles, City Attorney; Christopher S. Boynton, Deputy City
Attorney; Elena E. Ilardi, Associate City Attorney; John R. Lomax,
Guardian *ad litem* for the minor child, on brief), for appellee.
Appellee and Guardian *ad litem* submitting on brief.


Katie Furbee ("mother") appeals the circuit court's order terminating her parental rights to

her ten-year-old daughter G.G. and approving the foster care goal of adoption. Mother asserts that

the circuit court erred in terminating her parental rights because (1) the Virginia Beach Department

of Human Services ("the Department") failed to prove that she had been unable or unwilling to

remedy the conditions that led to G.G.'s placement and (2) the circuit court erred in admitting into

evidence several of G.G.'s out-of-court statements during the hearing. Because mother did not file

a timely transcript or written statement of facts, and a transcript or statement of facts is

indispensable to a determination of the issues on appeal, we affirm the circuit court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)).

Mother and Reginald G. ("father") are the biological parents of G.G., who was age five at the time of removal and is the subject of this appeal. The Department initially removed G.G. from the custody of her parents when mother "had a drug induced psychosis" and was hospitalized. While hospitalized, mother "admitted to making Methamphetamine in a hotel room with her spouse for several months." Mother, father, and G.G. completed a hair follicle test. G.G. tested positive for methamphetamine exposure. Mother's hair follicle test was negative for all substances, but in a follow-up urine test mother tested positive for methamphetamine, amphetamines, and benzodiazepines. Father's hair follicle test was positive for amphetamines, methamphetamine, and cocaine.

Due to mother's hospitalization, domestic violence issues between the parents, and drug concerns for both parents, the Department determined that G.G. required immediate placement. G.G. initially stayed with her grandmother, but two days later, the grandmother informed the Department that she was unable to care for G.G. long term due to "health problems and a sick relative." After a short placement in foster care, G.G.'s godmother, Felicia Barnes, agreed to be a placement option for G.G.

---

[1] The record in this case is sealed. Nevertheless, this appeal necessitates unsealing limited portions of the record, including factual findings, to resolve the issues mother has raised. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

In August 2019, Barnes informed the Department that she was unable to maintain custody of G.G. On August 20, 2019, the JDR court transferred custody of G.G. to the Department, based upon "Barnes' decision to no longer care for [G.G.], the continued concerns regarding the relationship between [mother] and [father], and the agency being unable to assess [mother's] living situation."

In February 2021, the Department submitted a foster care plan with the goal of adoption. The JDR court rejected the change of goal from return home to adoption and ordered the Department to continue to work with mother to achieve the goal of returning G.G. home. Although the Department remained concerned that mother was "dependent" on father "for emotional and financial support for the care of herself, and ultimately for the financial care of [G.G.] as well," the Department developed a "Reunification Plan" that was "designed to afford [mother and G.G.] unsupervised overnight visitation," for one night a week, starting on February 6, 2021. The reunification plan specifically stated that mother was required to protect G.G. from father "until he shows documentation that he has addressed his substance abuse and domestic violence issues, and court approves unsupervised contact." The "Reunification Plan" also prohibited mother from permitting any contact between G.G. and father while G.G. was in her care. Mother met with the Department and reviewed the obligations, including that G.G. was not permitted unsupervised contact with father.

Following an incident in which mother permitted G.G. to have unsupervised contact with father, the Department again petitioned for the termination of mother's parental rights. On June 1, 2021, the JDR court terminated mother's parental rights and approved the foster care goal of adoption. Mother appealed the JDR court's rulings to the circuit court. The circuit court approved the foster care goal of adoption and found that it was in G.G.'s best interests to terminate

mother's parental rights under Code § 16.1-283(C)(2), in a final order entered October 27, 2021.[2]

Mother timely noted her appeal,[3] but only filed a transcript on January 26, 2022.

ANALYSIS

This Court is unable to reach either of mother's assignments of error because she failed to timely file an indispensable transcript or written statement of facts. We find that a timely filed transcript is indispensable to determining both assignments of error. "If . . . the transcript is indispensable to the determination of the case, then the requirements for making the transcript a part of the record on appeal must be strictly adhered to. This Court has no authority to make exceptions to the filing requirements set out in the Rules." *Shiembob v. Shiembob*, 55 Va. App. 234, 246 (2009) (alteration in original) (quoting *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986)); *see also Bay v. Commonwealth*, 60 Va. App. 520, 528-29 (2012).

Mother was required to file a transcript or written statement of facts "in the office of the clerk of the trial court no later than 60 days after entry of the final judgment." *See* Rule 5A:8(a), (c)(1). The deadline for filing a transcript may be extended "by a judge of this Court only upon a written motion filed within 90 days after the entry of final judgment." Rule 5A:8(a). The final order terminating mother's parental rights to G.G. was entered on October 27, 2021. Mother filed a transcript of the proceedings on January 26, 2022, ninety-one days after entry of the final order. At

---

[2] The circuit court also terminated father's parental rights. Father did not appeal the circuit court's order.

[3] The final order was entered on October 27, 2021. On November 5, 2021, mother filed a letter with the clerk of court that contained her name, the date of the trial, the judgment she wanted to appeal, and the docket numbers. The letter was a timely filed notice of appeal, as it was filed within the thirty days required by Rule 5A:6. Moreover, the letter "adequately identifie[d] the case [being] appealed" by stating the docket numbers, the judgment from which mother was aggrieved, and the date of trial. *Nicholson v. Commonwealth¸* 300 Va. 17, 22 (2021) (quoting *Roberson v. Commonwealth*, 279 Va. 396, 407 (2010)). Finally, the Department noted on brief that the letter was not timely delivered to all counsel but did not object or argue for dismissal and entered a general appearance, waiving the issue. *See Ghameshlouy v. Commonwealth*, 279 Va. 379, 394 (2010).

no point did she request leave to file a late transcript. Mother's transcript was untimely. As a result, we must consider whether a transcript or statement of facts is indispensable to a determination of the assignments of error raised on appeal. *See Bay*, 60 Va. App. at 528-29; *Anderson v. Commonwealth*, 13 Va. App. 506, 508-09 (1992).

### I. Termination of Parental Rights

Mother argues that the circuit court erred in terminating her parental rights because there was insufficient evidence that mother was unwilling or unable to remedy the conditions that led to G.G.'s removal. A timely transcript is indispensable to deciding whether there was sufficient evidence to terminate mother's parental rights. While there are pleadings and exhibits in the record, we are unable to adequately judge what evidence was adduced at trial without the transcript or a statement of facts. Moreover, we are unable to review any testimony from the witnesses, including any testimony from mother. To decide the merits of this case without the trial transcript would essentially decide the merits of mother's arguments on an incomplete record. Moreover, in a criminal context, we have found a transcript or statement of facts is indispensable in deciding an assignment of error raising a sufficiency of the evidence claim. *See Smith v. Commonwealth*, 32 Va. App. 766, 772 (2000). Because mother failed to prove an indispensable transcript or statement of facts, we find that her first assignment of error is procedurally defaulted.

### II. Admissibility of Evidence

Mother also argues that the circuit court erred by admitting into evidence several out-of-court statements that G.G. made to a foster care supervisor. We are unable to address this assignment of error without a timely transcript or statement of facts. We cannot address mother's objection at trial or the circuit court's ruling without a record of what occurred at the hearing. Moreover, we cannot know what questions were asked of the witness, and the witness's answers, without looking to the transcript. As a result, a transcript or statement of facts is

indispensable to our ability to decide mother's second assignment of error. Therefore, mother's second assignment of error is procedurally defaulted.

CONCLUSION

Because a transcript or statement of facts is indispensable to our ability to address either of mother's assignments of error, we find that both assignments are procedurally defaulted. Therefore, we affirm the decision of the circuit court.

*Affirmed.*